IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Thomas McDonald Boxx, Jr., | ) | |
| | ) | C/A No. 2:18-0760-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| City of North Charleston, and Anthony | ) | |
| Kevin Russ, Roland Christopher Barrett, | ) | **ORDER AND OPINION** |
| R.E. Stone, and Anthony Jade King, in | ) | |
| their respective individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

     Plaintiff Thomas McDonald Boxx, Jr. filed a complaint on March 20, 2018, and an amended complaint on April 20, 2018. Plaintiff asserts that Defendants City of North Charleston, Anthony Kevin Russ, Roland Christopher Barrett, R.E. Stone, and Anthony Jade King violated his constitutional rights with respect to his arrest on June 27, 2016. See 42 U.S.C. § 1983. Plaintiff also asserts state law claims against City of North Charleston for false arrest/false imprisonment, malicious prosecution, and negligence/gross negligence. Plaintiff seeks actual and punitive damages. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Mary Baker Gordon for pretrial handling.

     On January 15, 2019, Defendants filed a motion for summary judgment. Plaintiff filed a response in opposition on January 29, 2019, to which Defendants filed a reply on February 4, 2010. On July 14, 2019, the Magistrate Judge issued a Report and Recommendation in which she recommended that Defendants' motion be granted. Plaintiff filed objections to the Report and Recommendation on July 29, 2019. Defendants filed a reply on August 8, 2019.

# I. FACTS AND PROCEDURAL HISTORY

The afternoon of June 27, 2016, Plaintiff was alone behind a shopping center in North Charleston, South Carolina, installing GPS tracking equipment on a paving vehicle owned by his employer. Depo. of Thomas McDonald Boxx, Jr., ECF No. 38-8, 10. His personal truck, a Toyota Tundra, was parked next to the paving vehicle. According to Plaintiff, he was on top of the engine block of the paving vehicle when he heard someone running behind the shopping center. Plaintiff alleges that a man stopped about an arm's reach away from the back passenger side door of the Tundra, looked up and noticed Plaintiff, then ran out of sight. Id. at 11. Plaintiff contends that he believed the man was trying to rob the vehicle and that he no longer felt safe. Plaintiff jumped off the paving vehicle and went to the Tundra, gathered his keys and phone, and removed a handgun from the glove box. Plaintiff "press checked the gun, which is making sure that there is a round chambered and then placed [the gun] by the center console where it would be in a central location [in the event Plaintiff needed to defend himself]." Id. at 12. Plaintiff then noticed the man behind the tailgate of the Tundra. Plaintiff reached his hand out and said, "Stop." The man continued walking and asked if anyone else was in the area. Plaintiff commenced screaming and cursing at the man to stop advancing. Id. at 12-13. The man left and Plaintiff returned to his employer's place of business.

The man who had approached Plaintiff is named Dominic Moore. Moore had been participating in physical training with a group led by army recruiters in order to get into better condition prior to enlistment. Depo. of Dominic Moore, ECF No. 38-11, 4. As part of the training, the group would meet at a recruiter's office across the street from the shopping center and run a standard route. According to Moore, the date of the incident he had arrived late at the recruiter's

office and was told to take the regular path behind the shopping center and attempt to catch up with his group. Id. at 5.

Moore states that he saw Plaintiff working and tried to get his attention. Moore asked Plaintiff, "Did you see anyone else back here?" and "Was there anybody else back here running by?" According to Moore, Plaintiff jumped off the paving vehicle, got in the driver's seat, and "racked his gun. . . . And he said, you better just get out of here." Id. Moore left and caught up with his group. Later that afternoon, after returning to the recruiter's office, Moore reported to the North Charleston Police Department that someone had pulled a weapon on him. Id. at 6.

Defendants Barrett and Russ arrived at the recruiter's office and took Moore's statement. They obtained a telephone number off the equipment behind the shopping center and were able to contact Plaintiff to return to the scene. Depo. of Anthony Kevin Russ, ECF No. 38-1, 6. Defendants Barrett and Russ took Plaintiff's statement. During the interview, Plaintiff admitted that he did not have a concealed weapons permit and that he was aware his gun should have remained in the glove box. Defendant King arrived on the premises and Defendant Russ decided to arrest Plaintiff for pointing and presenting a firearm at a person, in violation of S.C. Code Ann. § 16-23-410. ECF No. 38-1, 2 According to Defendant Russ, Plaintiff presented the weapon because Plaintiff "cantered his body, he grabbed his gun and chambered a round loud enough to where [Moore] could hear it–or he racked his gun. Cocked his gun where [Moore] could hear it." ECF No. 38-2, 3. Plaintiff was transported to a North Charleston Police Department facility. Later that day, Defendant Russ prepared an incident report and supporting documents for approval by a supervisor. Id. at 10. Defendant Russ also prepared an arrest packet consisting of an affidavit, prosecutive summary, incident report and supporting documents, and victim report for submission to Defendant Stone in

3

the warrants division.  Id.  Defendant Stone then affirmed before a magistrate that there was probable

cause to believe Plaintiff committed the offense of pointing and presenting a firearm.  The magistrate

issued an arrest warrant for Plaintiff on June 28, 2016.  ECF No. 38-2, 1 see Arrest Warrant, ECF

No. 37-2, 2-3.  The charges were dismissed in November 2016.  ECF No. 38-10, 8.[1]

Plaintiff alleges that Defendants Russ, Barrett, Stone, and King, in their individual capacities,

acted under color of state law to deprive Plaintiff of his rights under the Fourth Amendment to be

secure against unreasonable seizures and free from unnecessary governmental interference.  Plaintiff

further asserts that Defendant City of North Charleston has implemented customs and practices

within the North Charleston Police Department with respect to its arrest warrant procedures and the

training and supervision of its officers that created an atmosphere of deliberate indifference to the

constitutional rights of the public, including Plaintiff (First Cause of Action).  Amended Complaint,

ECF No. 12, ¶¶ 23, 25.  Plaintiff also alleges that Defendant City of North Charleston (1)

intentionally deprived Plaintiff of his personal liberty without lawful justification (Second Cause of

Action); (2) acted without probable cause in arresting Plaintiff, such that the charges were dropped

and Plaintiff is entitled to pursue a malicious prosecution claim (Third Cause of Action); and (3) was

negligent and grossly negligent in breaching its duty to properly hire, train, supervise, control, and

discipline its officers (Fourth Cause of Action).  See generally id. ¶¶ 30-32, 35-37, 43-44.

In their motion for summary judgment, Defendants argue Defendant Russ possessed probable

cause to arrest Plaintiff based on the evidence that Plaintiff "presented" his gun to Moore by virtue

---

[1] The Magistrate Judge recited facts based upon Plaintiff's amended complaint and body
cam videos submitted to the parties, which facts are somewhat different from the facts recounted
in Plaintiff's deposition.  For example, on the body cam video, Plaintiff states that he placed the
gun behind him, and not on the console.  To the extent a discrepancy exists, the events filmed at
the time of the incident control.

of the distinctive sound the gun made as it was being racked and his apparent intention to threaten Moore. Defendants further argue that, even if Defendant Russ lacked probable cause to arrest Plaintiff for pointing and presenting a firearm, his mistake was harmless because Defendant Russ also had probable cause to arrest Plaintiff for unlawful carry of a handgun, in violation of S.C. Code Ann.§ 16-23-20, under the uncharged offense doctrine.

Defendants assert that Defendant Stone's actions were proper because the hearsay information he received from Defendant Russ, as affiant, was adequate to establish probable cause. Defendants contend that Defendant Stone is not required to have independent knowledge of the facts in order to present a warrant to the magistrate. As to Defendant King, Defendants note that this Defendant simply approved the arrest of Plaintiff. Defendants assert that Plaintiff seeks to establish supervisory liability under § 1983, but that Plaintiff's amended complaint references no prior unconstitutional acts by any of the officers in this case of which Defendant King was or should have been aware, or that he showed deliberate indifference to Plaintiff's plight. Finally, Defendants argue that all the individual Defendants are entitled to qualified immunity.

With respect to the state law claims against Defendant City of North Charleston, Defendants contend that (1) Plaintiff's claim for false arrest fails because probable cause for the arrest existed; (2) Defendant City of North Charleston is entitled to the protections of the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10, et seq.; and (3) there is no evidence of negligence or gross negligence.

## II. APPLICABLE LAW

A. Applicable Federal Law

1. Title 42, United States Code, Section 1983. The Constitution does not provide, by

itself, a cause of action to address alleged violations of its provisions. A plaintiff must instead bring his claim of a constitutional violation under a statute that provides a cause of action, such as § 1983. In order to state a claim under § 1983, the plaintiff must demonstrate that (1) a person (2) acting under color of state law (3) deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982).

      2.    Qualified Immunity. Qualified immunity shields government officials from liability in a § 1983 suit as long as their conduct has not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Humbert v. Mayor & City Council, 866 F.3d 546, 556 (4th Cir. 2017) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the facts illustrate that the officer violated the plaintiff's constitutional right to be free from unreasonable seizures, and (2) whether the right was clearly established at the time of the alleged event such that a reasonable officer would have understood that his conduct violated the asserted right. Id. (citing Miller v. Prince George's Cty., 475 F.3d 621, 627 (4th Cir. 2007)). To avoid dismissal of a complaint after a qualified immunity defense is raised, a plaintiff must allege sufficient facts to set forth a violation of a constitutional right, and the court must conclude that this right was clearly established at the time of the alleged violation. Sims v. Labowitz, 885 F.3d 254, 260 (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear that every reasonable official would understand that what he is doing is unlawful." D.C. v. Wesby, 138 S.C. 577, 590 (2018) (citing Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011)). In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. Id. (citing al–Kidd, 563 U.S. at 741).

According to Supreme Court, "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

3.    Fourth Amendment.  The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  A police officer may lawfully arrest an individual in a public place without a warrant if the officer has probable cause to believe that the individual has committed, is committing, or is about to commit a crime.  United States v. Dickey-Bey, 393 F.3d 449, 453 (4th Cir. 2004). Probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.  Id. (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).

4.    Municipal Liability under 42 U.S.C. § 1983.  To make out a successful claim for municipal liability under 42 U.S.C. § 1983, a plaintiff must demonstrate that an official municipal custom or policy caused the alleged violation.   Monell v. Dep't of Social Servs., 436 U.S. 658, 690–91 (1978).  Municipal liability under § 1983 attaches where a deliberate choice to follow a course of action is made from among various alternatives by city policymakers.  City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986)).

5.    Challenging an Arrest Warrant.  "The Fourth Amendment requires a hearing to be held at a defendant's request 'where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit . . . if the allegedly false statement is necessary to the finding of probable cause[.]'"  United States v. Robinson, 770 F. App'x 627, 628-29 (4th Cir. 2019) (quoting

Franks v. Delaware, 438 U.S. 154, 155-56 (1978)). This showing "'must be more than conclusory' and 'must be accompanied by an offer of proof.'" Id. (quoting Franks, 438 U.S. at 171).

6. <u>Supervisory Liability Under § 1983</u>. Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. <u>Slakan v. Porter</u>, 737 F.2d 368, 372 (4th Cir. 1984). "Liability in this context is not premised on respondeat superior, <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 691 [] (1978), but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id.

B. <u>Applicable State Law</u>

1. <u>Pointing and Presenting a Firearm</u>. Section 16-23-410 provides:

It is unlawful for a person to present or point at another person a loaded or unloaded firearm.

A person who violates the provisions of this section is guilty of a felony and, upon conviction, must be fined in the discretion of the court or imprisoned not more than five years. This section must not be construed to abridge the right of self-defense or to apply to theatricals or like performances.

The elements of presenting a firearm are: (1) presenting, (2) a loaded or unloaded firearm, (3) at another. <u>In re Spencer R.</u>, 692 S.E.2d 569, 573 (S.C. Ct. App. 2010) (citing <u>State v. Burton</u>, 589 S.E.2d 6, 8 (S.C. 2003)). The South Carolina Court of Appeals has defined the phrase "to present" a firearm in section 16-23-410 as "to offer to view in a threatening manner, or to show in a threatening manner." <u>Spencer R.</u>, 692 S.E.2d at 572.

2. <u>False Arrest/Imprisonment</u>. False imprisonment is the deprivation of one's liberty without justification. <u>Jones v. Winn-Dixie Greenville, Inc.</u>, 456 S.E.2d 429, 432 (S.C. Ct. App. 1995) (citing <u>Caldwell v. K–Mart Corp.</u>, 410 S.E.2d 21 (S.C. Ct. App.1991)). In order to recover

under a theory of false imprisonment, the plaintiff must establish (1) the defendant restrained him; (2) the restraint was intentional; and (3) the restraint was unlawful. Id. (citing Andrews v. Piedmont Air Lines, 377 S.E.2d 127 (S.C. Ct. App. 1989)).

3.    South Carolina Tort Claims Act.  In S.C. Code Ann. § 15-78-40, the General Assembly waived immunity on the part of the state, its political subdivisions, and employees for torts in the same manner and to the same extent as a private individual under like circumstances, subject to certain limitations set forth in the Act. The remedies provided under section 15-78-40 are the exclusive civil remedies available for any tort committed by a governmental entity, its employees, or its agents except as provided in section 15-78-70(b). Under section 15-78-70(b), an employee of a governmental entity is not immune from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.

4.    Warrantless Arrest and Gross Negligence.  Under S.C. Code Ann. § 17-13-30, law enforcement officers "may arrest without warrant any and all persons who, within [the officers'] view, violate any of the criminal laws . . . if such arrest be made at the time of such violation of law or immediately thereafter." S.C. Code Ann. § 23-13-60 further provides that officers "may for any suspected freshly committed crime, whether upon view or upon prompt information or complaint, arrest without warrant[.]" In State v. Martin, 268 S.E.2d 105, 107 (S.C. 1980), the South Carolina Supreme Court held that "an officer can arrest for a misdemeanor [not committed within his presence] when the facts and circumstances observed by the officer give him probable cause to believe that a crime has been freshly committed."

S.C. Code § 16-25-70 provides:

(A)     A law enforcement officer may arrest, with or without a warrant, a person at the person's place of residence or elsewhere if the officer has probable cause to believe that the person is committing or has freshly committed a misdemeanor or felony pursuant to the provisions of Section 16-25-20, 16-25-65, or 16-25-125, even if the act did not take place in the presence of the officer.  The officer may, if necessary, verify the existence of probable cause related to a violation pursuant to the provisions of this chapter by telephone or radio communication with the appropriate law enforcement agency. A law enforcement agency must complete an investigation of an alleged violation of this chapter even if the law enforcement agency was not notified at the time the alleged violation occurred. The investigation must be documented on an incident report form which must be maintained by the investigating agency. If an arrest warrant is sought, the law enforcement agency must present the results of the investigation and any other relevant evidence to a magistrate who may issue an arrest warrant if probable cause is established.

        . . . .

(I) In addition to the protections granted to the law enforcement officer and law enforcement agency under the South Carolina Tort Claims Act, a law enforcement officer is not liable for an act, omission, or exercise of discretion under this section unless the act, omission, or exercise of discretion constitutes gross negligence, recklessness, wilfulness, or wantonness.

    5.    <u>Uncharged Offense Doctrine</u>.  It is permissible to rely on an uncharged offense to establish probable cause.  In the context of a tort action, the plaintiff has the burden of proving lack of probable cause. <u>Jackson v. City of Abbeville</u>, 623 S.E.2d 656, 660 (S.C. Ct. App. 2005).

    6.    <u>Unlawful Carrying of a Handgun</u>.  S.C. Code Ann. § 16-23-20 provides:

It is unlawful for anyone to carry about the person any handgun, whether concealed or not, except as follows, unless otherwise specifically prohibited by law:

(9) a person in a vehicle if the handgun is:

(a) secured in a closed glove compartment, closed console, closed trunk, or in a closed container secured by an integral fastener and transported in the luggage compartment of the vehicle; however, this item is not violated if the glove compartment, console, or trunk is opened in the presence of a law enforcement officer for the sole purpose of retrieving a driver's license, registration, or proof of insurance. If the person has been issued a concealed weapon permit pursuant to Article 4, Chapter 31, Title 23, then the person also may secure his weapon under a seat in a

vehicle, or in any open or closed storage compartment within the vehicle's passenger compartment; or

(b) concealed on or about his person, and he has a valid concealed weapons permit pursuant to the provisions of Article 4, Chapter 31, Title 23[.]

The unlawful carry of a handgun is a misdemeanor. S.C. Code Ann. § 16-23-50(A)(2).

## III. DISCUSSION

### A. The Magistrate Judge's Report and Recommendation

The Magistrate Judge first observed that Plaintiff never visibly showed Moore the firearm. Moore denied seeing the weapon, but stated only that he heard Plaintiff "rack" the firearm. Relying on Spencer R., the Magistrate Judge determined that Defendants Russ and Barrett lacked probable cause to conclude Plaintiff's conduct during the incident amounted to "presenting a firearm" under South Carolina law. However, the Magistrate Judge determined that Defendants are entitled to qualified immunity. The Magistrate Judge observed the Supreme Court's admonition that, given the imprecise nature of probable cause, it is necessary to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. The Magistrate Judge determined that the Spencer R. decision did not place the lawfulness of Plaintiff's arrest "beyond debate." The Magistrate Judge found that, although it is undisputed that Plaintiff did not visibly display his gun, he did "rack" his gun such that Moore could hear and recognize the sound. Accordingly, the Magistrate Judge recommended that summary judgment should be granted to Defendants Russ and Barrett as to the § 1983 claim.

The Magistrate Judge additionally determined that summary judgment should be granted in favor of Defendants Russ and Barrett under the uncharged defense doctrine. The Magistrate Judge noted that probable cause existed to arrest Plaintiff for unlawful carry of a handgun, even though the

weapon was secured upon Plaintiff's return to the scene, because he admitted to having removed his weapon from the glove box during his interaction with Moore. The Magistrate Judge determined that the misdemeanor was sufficiently freshly committed to allow Defendants Russ and Barrett to arrest Plaintiff without a warrant. The Magistrate Judge recommended that summary judgment be granted on this additional basis.

Next, the Magistrate Judge addressed Plaintiff's claim, raised for the first time in his response to Defendants' motion for summary judgment, that Defendants Russ and Stone violated his Fourth Amendment rights by presenting a sworn affidavit with knowingly false information to the state court magistrate.

The Magistrate Judge observed that Plaintiff's claim is not properly before the court because it was not raised in the complaint. Nevertheless, the Magistrate Judge addressed Plaintiff's argument and determined that it was objectively reasonable for Defendant Russ to believe Plaintiff's conduct amounted to the offense of presenting a firearm. Thus, Magistrate Judge also found there was no basis to find Defendant Russ deliberately or with a reckless disregard for the truth made material false statements in the affidavit. The Magistrate Judge also determined that Plaintiff had submitted no evidence to support a finding that Defendant Stone acted with reckless disregard in submitting Defendant Russ's affidavit to the magistrate. The Magistrate Judge therefore recommended that summary judgment be granted as to this § 1983 claim.

Next, the Magistrate Judge noted that there is no basis to find Defendant King liable in a supervisory capacity because the initial arrest and subsequent warrant were not constitutional violations. The Magistrate Judge also determined that Plaintiff made only conclusory allegations of a widespread pattern or practice at the North Charleston Police Department of improper processing

of warrants or that Defendant King had constructive or actual knowledge of any such pattern or practice. Accordingly, the Magistrate Judge recommended that Plaintiff's § 1983 claim against Defendant King be dismissed. For the same reasons, the Magistrate Judge concluded that Plaintiff's § 1983 allegations against Defendant City of North Charleston failed and that summary judgment in favor of Defendant City of North Carolina should be granted as to Plaintiff's § 1983 claim.

With respect to Plaintiff's state law claims, the Magistrate Judge found that the claims for false arrest/false imprisonment and malicious prosecution fail as a matter of law because there was probable cause to believe Plaintiff had committed the offense of unlawful carrying of a handgun. The Magistrate Judge also determined that Plaintiff presented no evidence that any individual Defendants were not properly hired, supervised, trained, or disciplined. According to the Magistrate Judge, the only reasonable inference that could be drawn from the evidence is that the City of North Charleston exercised at least "slight care." Therefore, the Magistrate Judge recommended that summary judgment be granted as to Plaintiff's state law claims.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1). This court may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. Id. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

B.    Plaintiff's Objections

Plaintiff first contends the Magistrate Judge erred in finding that Defendants are entitled to qualified immunity.  Plaintiff contends that the Wesby case is not dispositive of the question of qualified immunity.  Plaintiff argues that in Wesby there was no case on point or body of law the plaintiff was able to point to in order to satisfy the "clearly established" requirement.  According to Plaintiff, the within action is distinguishable because the South Carolina Court of Appeals specifically defined "presenting" for purposes of S.C. Code Ann. § 16-23-410 in In re Spencer R., 692 S.E.2d 569, 573 (S.C. Ct. App. 2010).

In Spencer R., Spencer purportedly threatened a fifteen-year-old girl, who reported the threat to her mother.  After the school day concluded, the mother drove to a bus stop to pick up her daughter.  On the way, she observed Spencer in the driveway of his house holding an assault rifle "at a ten o'clock angle, with the bottom of the gun about level with his chest and the barrel in the air."  629 S.E.2d at 519.  The mother called authorities after arriving at her residence.  Spencer was arrested and found guilty of presenting a loaded assault rifle.

The issue in Spencer R. was whether section 16-23-410 required "direct, actively aggressive, and threatening" conduct.  Spencer R., 692 S.E.2d at 521.  The court of appeals concluded that "to present" a firearm included "to offer to view in a threatening manner, or to show in a threatening manner."  Id. at 522-23.  The question of whether the term "to present" could also include the sound of charging, racking, cocking, press checking, or any other noise associated with readying a weapon in a threatening manner to fire, was not before the court of appeals.  Plaintiff's objection is without merit.

Plaintiff next asserts that a jury should decide the issue of whether there was probable cause

to arrest Plaintiff for the uncharged defense of unlawful carrying of a handgun. Plaintiff contends there are questions of fact regarding the location of the gun. Plaintiff also asserts there was no eye witness to the exact particulars of the event. To the contrary, Plaintiff himself admitted that his weapon had been removed from the glove box and that he had the weapon in a location where he could easily obtain it should he feel the need. There is no reasonable inference to support a finding that Plaintiff's gun was not "secured in a closed glove compartment, closed console, closed trunk, or in a closed container secured by an integral fastener and transported in the luggage compartment of the vehicle." S.C. Code Ann. § 16-23-20. Plaintiff's objection is without merit.

Plaintiff contends that the Magistrate Judge failed to construe the facts in his favor. As examples, Plaintiff denies he ever said he "racked" the firearm. However, Plaintiff admitted that he "press checked" and "charged" his gun. It appears the sound was loud enough to alert Moore, or he would have been unaware of the weapon's existence. Plaintiff also contends that the Magistrate Judge erred in stating Plaintiff held the gun behind him during the incident with Moore. Plaintiff states that, to the contrary, the weapon was behind him in the vehicle but not in his hands. The court finds no error in the Magistrate Judge's interpretation of Plaintiff's statement in the body cam video that Plaintiff "had" the gun behind his back. Regardless, Defendant Russ based Plaintiff's arrest on his belief that Plaintiff had interacted with Moore by "grabb[ing] his gun and [racking it] loud enough to where [Moore] could hear it[.]" Plaintiff's objection is without merit.

Plaintiff next asserts that Defendant City of North Charleston's policy of having a warrant officer sign off on affidavits he knows nothing about with no attestation from any arresting officer creates an illegal custom and practice of the North Charleston Police Department. The court disagrees.

In <u>State v. Dunbar</u>, 603 S.E.2d 615, 619 (S.C. Ct. App. 2004), the South Carolina Court of Appeals held that magistrates can issue warrants based upon hearsay information that is not a result of direct personal observations of the affiant. (citing <u>State v. Sullivan</u>, 614-15, 230 S.E.2d 621, 623 (S.C. 1976) (finding a search warrant affidavit may be based on hearsay information)).  The <u>Dunbar</u> court further determined that probable cause can be supported by information given to the affiant by other officers.  <u>Id.</u> (citing <u>United States v. Ventresca</u>, 380 U.S. 102 (1965)).  In this case, Defendant Stone affirmed in his affidavit that he possessed hearsay knowledge about the incident through the incident report, warrant, and warrant affidavit provided to him by Defendant Russ.  Plaintiff's objection is without merit.

Finally, Plaintiff asserts that because there was not probable cause to arrest him, the false arrest/false imprisonment and malicious prosecution claims should proceed to trial.  Plaintiff further contends that genuine issues of material fact exist as to whether Defendants acted with gross negligence.  For the reasons stated hereinabove and by the Magistrate Judge, the court concludes that Plaintiff's objections are without merit.

## IV.  <u>CONCLUSION</u>

The court concurs in the Report and Recommendation and incorporates it herein by reference. Defendant's motion for summary judgment (ECF No. 36) is **granted** and the case dismissed, with prejudice.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina
September 27, 2019